United States District Court
For The District of Columbia

United States of America
       Respondent,

VS.                                            Crim. Case No.07-153-4
                                                 Judge Thomas Hogan

Herbert Francis Young
       Defendant,

**FILED**

**JUN 16 2008**

Clerk, U.S. District and
Bankruptcy Courts

## MOTION TO SUPRESS STATEMENTS

COMES NOW, the defendant, proceeding in his own **pro se** manner, respectfully moves this Honorable Court to **suppress** any and all **self-incriminating statements obtain by Law Enforcement officers, in violation of the defendant's 5th Amendment Rights.**

## INTRODUCTION

F.B.I officers and Law Enforcement officers had conducted a two (2) years investigation in between the years of 2005 and 2007, by **'targeting Mr. L. Glover'. Their primarily mission was to hide a "BUG" in Mr. Glover's Truck to obtain self-incriminating statements from any suspects, that Mr. L. Glover talks to**

RECEIVED
JUN 16 2008
Clerk, U.S. District and
Bankruptcy Courts

**within his vehicle. Also, Law Enforcement Officers was granted permission from a judge to "WIRE-TAPPED" Mr. L. Glover's cell-phone without his consent, in violation of the Miranda Warning requirement. As a result, Mr. Young became another suspect, by means of a wire-tapping scam.**

On June ____19____, 2007 at approximated 6:02 a.m. in the morning, F.B.I. Agents and Law Enforcement officers had executed a search warrant, by entering into the address of 2518 Q Street S.E., Washington, D.C... Upon officers running up the stairs, ten (10) officers had drawn their hand guns and shot guns directed on Mr. Young and his family, with a threat to do body harm.

The officers had than dragged Mr. Young to the floor in the nude, placed him in handcuffs, removed him to the top of the stair-well pointed guns at his head and 'asked Mr. Young a question, if there was any guns or drugs in the house?

Mr. Young had responded to the officer's question and had stated that " his son work's for a Security Company and there may be a gun in the house! This statement was made out of duress and distress, Mr. Young does not ever recall making a statement that ' item found underneath the side of his bed, were his.' The arresting officer than had asked Mr. Young's wife a question being in handcuffs also, which was 'where does Mr. Young sleep at? The police report says: "Mr. Young slept on the right side of the bed in the master bedroom." Mr. Young and his family was escorted downstairs to the living room for safety reasons. Mr. Young was than transported to the Washington Field Office by SAS West and Hanzel, but his Miranda Rights was

never read to him until 7:32 a.m., once he was booked at the station. Mr. Young now admits that the night before being arrested, he had taken some pain medication for his back and other medication that has been prescribed in the past.

## ARGUMENT

The defendant now seek to have all statements suppress and not to exclude any wire-tapping tapes that involve him, in which the Government seeks to introduce at the up-coming trial. The defendant argue that he had not been given his Miranda Warnings prior to being questioning during the search of the residence or wire-tapping cell-phones.

From viewing the POLICE REPORT, it is an undisputed fact that neither officers life was ever put in jeopardy while making a search of 2518 Q Street, S.E., Washington, D.C., because Mr. Young and his family was all placed in handcuffs, prior to the search. Mr. Young contends that the arresting officer asked him and his wife questions not necessary to secure [their] own safety, but actually trying to 'elicit incriminating evidence. See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694 (1966). The public safety exception law cannot be use to protect police misconduct in this case at all and it should not apply. See U.S. v. Reyes, 249 F. Supp. 2d 277 (S.D.N.Y.). See also, New York v. Quarles, 467 U.S. 649, 104 S. Ct. 2626, 81 L. Ed. 2d 550 (1984).

The realistic matter of this case, is that, the arresting officers was trying to

execute a " Federal Warrant" for Mr. Young's arrest, due to an indictment handed down by the Grand Jury. The record is very clear that, Mr. Young did not have any prior criminal background, but Law Enforcement officers had to conduct a police data search for his whereabouts, before making a search of the premises.

A.  **THE LAW**

The Fifth Amendment provides that:

The "Self-Incrimination Clause of the Fifth Amendment" guarantees that "no Person shall be compelled in any criminal case to be a witness against himself."

**U.S. Const. amend. V.**

Under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), statement made by a suspect in custody in response to police interrogation are inadmissible, unless certain new famous warnings preceded the statements, Id. at 454, 86 S. Ct. 1602. In Dickerson v. United States, 530 U.S. 428, 120 S. Ct. 2326, 147 L. Ed. 2d. 405 (2000), the Supreme Court reaffirmed this ruling and made clear that the Miranda rules is of constitutional magnitude. Id. at 432. The Supreme Court Judges had created and commanded police officers to read a four-point warning card to all suspects before being questioning or during an interrogated process, which the language specifically states: (1) You have the right to remain silent before being question (2) Anything that you say will be use against you in a court of law, (3) You have a right to an attorney before making any statements and (4) And if you don't have an attorney,

the Court will appoint you an attorney. The language incorporated within the Constitution is not vague or ambiguous, because it specifically states that **"No person shall be compelled in any criminal case to be a witness against himself."** A statement obtained outside the scope of the Miranda warnings, should be declared inadmissible in the Court. See Withrow v. Williams, 507 U.S. 680, 688, 123 L. Ed. 2d. 407; Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694. See also, U.S. v. Kruger, 151 F. Supp. 86, 98 (D. Me. 2001).

The question of whether the tangible fruits of an interrogation conducted in violation of Miranda requirements are subject to exclusion from evidence against the person so interrogated under the Fifth Amendment provision guaranteeing freedom from self-incrimination is clearly generated in this case, even though not noticed or briefed by counsel. That question has been, prior decision in Dickerson v. United States, 530 U.S. 428, 120 S. Ct. 2326, 147 L. Ed. 2d. 405 (200)., the subject much labored judicial analysis. See U.S. v. Byram, 145 F. 3d 405 (1st Cir. 1998); see also, U.S. v. Elie, 111 F. 3d 1135, 1141-42 (4th Cir. 1997). The decision in Dickerson changed the landscape, however, by conferring constitutional status on the Miranda right to a warning. Since Dickerson, the answer to the question is properly demonstrated by a clear and direct analytic construct based entirely on recognized decisions of the United States Court: (1) a person in custody has a right not to be interrogated without first being given a four-point warning of his rights in respect to such interrogation and of the interrogator's question. Miranda v. Arizona, 384 U.S. at 444, 86 S. Ct. 1612, which Right is of constitutional origin and dimension, Dickerson, 530 U.S. at 440, 120 S. Ct. at

2334; (2) tangible evidence obtained directly or indirectly as a result of a violation of the Constitutionally based rights of a person cannot be, over objection, introduce into Evidence in a criminal case against the person whose rights have been violated in Obtaining the evidence, See <u>Wong Sun</u> v. <u>United States</u>, 371 U.S. 471, 485, 83 S. Ct. 407, 416, 9 L.Ed. 2d 441 (1963) ( " The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion.")(emphasis added) Nix, 467 U.S. at 442, 104 S. Ct. at 2508 (purpose of fruit poisonous tree doctrine is to " deter police from violations of constitutional and statutory protections"); and (3) therefore, tangible evidence obtained directly or indirectly from an interrogation conducted in violation of rights of constitutional dimension, must be, on demand, suppressed.

It is well established in this case, that the defendant was placed in "HANDCUFFS" upon being question by Law Enforcement Officers, he was not "FREE TO LEAVE", he could not make a telephone call to any lawyer, he was not advised of his Miranda Rights warnings and neither statements was giving in a voluntarily sense. The Question in this case is whether the defendants' will was "OVERBORNE" at the time he confessed?

The admission into evidence of an involuntarily made confession is a violation of a defendant's Fourteenth Amendment due process rights. See <u>Haynes</u> v. <u>State of Washington</u>, 373 U.S. 503, 513 (1963). Furthermore, the Criminal P. Rule #403 prohibit the Government for using prejudicial evidence before a Jury Panel, to deprive the defendants of a fair trial. See <u>U.S.</u> v. <u>Daniel</u>, 770 F. 2d 1111, 1116. (D.C. Cir.).

The defendant contends that any statements that he had made in this case was not knowingly made in an intelligent manner. The defendant states that he was on medication prior to the morning of his arrest and the arresting officers did not ever inquire about Mr. Young's illness. When a person makes a confession while being on medication and under duress, the Court must vacate the self-incriminating statements, obtained in violation of his 5th Amendment Rights. See Townsend v. Sain, 372 U.S. 293, 9 L. Ed. 2d 770.

The defendant re-asserts that Congress had enacted the "Wire-Tapping" statue for Law Enforcement officers to obtain incriminating statements from alleged suspects that may be about to commit a crime, contrary to a protection of the 5th Amendment Rights, as a malicious intent to "WHITE-WASHED" the Constitution. However, this above factor is tainted by the officer's use of "TRICKERY" to obtain a consent to invade a person's privacy rights and to insidiously invoke the suspects Miranda Rights. See Lanni, 951 F. 2d. at 441.. Mr. Young now advised this Court, the Government cannot 'compel his wife to testify against her husband.'

## CONCLUSION

The defendant respectfully request that this motion be granted, as justice requires.

Respectfully submitted,

*Herbert F Young*  
HERBERT F. YOUNG #315-140

Executed on this 14th day of June, 2008.

*Herbert F Young*

- 8 -